# UNITED STATES DISTRICT COURT
## for the Southern District of Illinois

Israel Muñoz-Gallardo
    Plaintiff / Petitioner(s)

V.

County of Jefferson - In its capacity as indemnitor to Sheriff Mulch
Roger D. Mulch - Sheriff of Jefferson County
Randy Pollard - Jail Administrator/Captain at Jefferson County Jail
Mount - Lieutenant at the Jefferson County Jail / Shift Supervisor
C/O Jefferson - Jail Guard at the Jefferson County Jail
C/O Edwards - Jail Guard at the Jefferson County Jail
C/O Widget - Jail Guard at the Jefferson County Jail
Unknown Sheriff's Deputy - Sheriff's Deputy
C/O Gray - Jail Guard at the Jefferson County Jail
C/O Hanes - Jail Guard at the Jefferson County Jail
C/O Pesca - Jail Guard at the Jefferson County Jail
Unknown 3rd Shift Supervisor - 3rd Shift Supervisor / Lieutenant
    Defendant / Respondent(s)

Case Number **11-530-MJR**

☒ CIVIL RIGHTS COMPLAINT
Pursuant to 42 U.S.C. §1983 (State Prisoner)

☐ CIVIL RIGHTS COMPLAINT
Pursuant to 28 U.S.C. §1331 (Federal Prisoner)

☐ CIVIL COMPLAINT
Pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680

**FILED**
JUN 1 6 2011
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

## 1. JURISDICTION

A. Plaintiff's mailing address and/or register number and present place of confinement
I.D. # 2006-0043237, P.O. Box 089002, Chicago, Illinois, 60608
Cook County Department of Corrections

B. Defendant __County of Jefferson__ is employed as
   (Name of first defendant)
__County of Jefferson__
   (Position/Title)
with __N/A__
   (Employer's name and address)
__N/A__

At the time the claim(s) alleged in this complaint arose was the defendant employed by the state, local, or Federal government ☐ NO ☒ Yes

If your answer is "yes", briefly explain:

C. Defendant __Roger D. Mulch__ is employed as
   (Name of Second defendant)
__Sheriff of Jefferson County__
   (Position/Title)
with __County of Jefferson, MT. Vernon, Illinois, 62864__
   (Employer's name and address)

At the time the claim(s) alleged in this complaint arose was the defendant employed by the state, local, or Federal government ☒ Yes ☐ NO

If your answer is "yes", briefly explain: __Defendant Mulch is the Sheriff of Jefferson County__

(1)

D. Defendant __Randy Pollard__ is employed as
   (Name of third defendant)
   __Jail Administrator / Captain__
   (Position / Title)
with __Jefferson County Detention Facility__
   (Employer's name and address)
__911 Casey Ave., Mt. Vernon, Illinois, 62864__

At the time the claims alleged in this complaint arose, was the defendant employed by the State, Local, or Federal government? ☒ Yes ☐ No

If your answer is "yes", briefly explain: __Defendant Pollard works as a Jail Administrator / Captain at the Jefferson County Detention Facility.__

E. Defendant __Mount__ is employed as
   (Name of fourth defendant)
   __Lieutenant / Shift Supervisor__
   (Position / Title)
with __Jefferson County Detention Facility__
   (Employer's name and address)
__911 Casey Ave., Mt. Vernon, Illinois, 62864__

At the time the claims alleged in this complaint arose, was the defendant employed by the State, Local, or Federal government? ☒ Yes ☐ No

If your answer is "yes", briefly explain: __Defendant Mount works as a Lieutenant / Shift Supervisor at the Jefferson County Detention Facility.__

F. Defendant __Jefferson__ is employed as
   (Name of fifth defendant)
   __Jail Guard__
   (Position / Title)
with __Jefferson County Detention Facility__
   (Employer's name and address)
__911 Casey Ave., Mt. Vernon, Illinois, 62864__

At the time the claims alleged in this complaint arose, was the defendant employed by the State, Local, or Federal government? ☒ Yes ☐ No

If your answer is "yes", briefly explain: __Defendant Jefferson works as a Jail Guard at the Jefferson County Detention Facility.__

G. Defendant __Edwards__ is employed as
   (Name of sixth defendant)
   __Jail Guard__
   (Position / Title)
with __Jefferson County Detention Facility__
   (Employer's name and address)
__911 Casey Ave., Mt. Vernon, Illinois, 62864__

At the time the claims alleged in this complaint arose, was the defendant employed by the State, Local, or Federal government? ☒ Yes ☐ No

If your answer is "yes", briefly explain: __Defendant Edwards works as a Jail Guard at the Jefferson County Detention Facility.__

H. Defendant **Widget** is employed as
(Name of seventh defendant)
**Jail Guard**
(Position/Title)
with **Jefferson County Detention Facility**
(Employer's name and address)
**911 Casey Ave., Mt. Vernon, Illinois, 62864**
At the time the claims alleged in this complaint arose, was the defendant employed by the State, Local, or Federal government? ☒ Yes ☐ No
If your answer is "yes", briefly explain: **Defendant Widget works as a Jail Guard at the Jefferson County Detention Facility.**

I. Defendant **Unknown Sheriff's Deputy** is employed as
(Name of eighth defendant)
**Sheriff's Deputy**
(Position/Title)
with **Jefferson County Detention Facility**
(Employer's name and address)
**911 Casey Ave., Mt. Vernon, Illinois, 62864**
At the time the claims alleged in this complaint arose, was the defendant employed by the State, Local, or Federal government? ☒ Yes ☐ No
If your answer is "yes", briefly explain: **Unknown Sheriff's Deputy works as a Sheriff's Deputy for the County of Jefferson.**

J. Defendant **Gray** is employed as
(Name of ninth defendant)
**Jail Guard**
(Position/Title)
with **Jefferson County Detention Facility**
(Employer's name and address)
**911 Casey Ave., Mt. Vernon, Illinois, 62864**
At the time the claims alleged in this complaint arose, was the defendant employed by the State, Local, or Federal government? ☒ Yes ☐ No
If your answer is "yes", briefly explain: **Defendant Gray works as a Jail Guard at the Jefferson County Detention Facility.**

K. Defendant **Hanes** is employed as
(Name of tenth defendant)
**Jail Guard**
(Position/Title)
with **Jefferson County Detention Facility**
(Employer's name and address)
**911 Casey Ave., Mt. Vernon, Illinois, 62864**
At the time the claims alleged in this complaint arose, was the defendant employed by the State, Local, or Federal government? ☒ Yes ☐ No

(3)

L. Defendant __Pesca__ is employed as
   (Name of eleventh defendant)
   __Jail Guard__
   (Position/Title)

with __Jefferson County Detention Facility__
   (Employer's name and address)
   __911 Casey Ave., Mt. Vernon, Illinois, 62864__

At the time the claims alleged in this complaint arose, was the defendant employed by the State, Local, or Federal government? ☒ Yes ☐ No

If your answer is "yes", briefly explain: __Defendant Pesca works as a Jail Guard at the Jefferson County Detention Facility.__

M. Defendant __Unknown 3rd shift Supervisor/Lieutenant__ is employed as
   (Name of twelfth defendant)
   __Lieutenant/Shift Supervisor__
   (Position/Title)

with __Jefferson County Detention Facility__
   (Employer's name and address)
   __911 Casey Ave., Mt. Vernon, Illinois, 62864__

At the time the claims alleged in this complaint arose, was the defendant employed by the State, Local, or Federal government? ☒ Yes ☐ No

If your answer is "yes", briefly explain: __Defendant Shift Supervisor is employed as a Lieutenant/Shift Supervisor at the Jefferson County Detention Facility.__

(4)

## "Caption"
### Individual and Official Capacity

A.) At all times relevant to this complaint Defendant County of Jefferson is is sued in it's capacity as indemnitor to Sheriff Mulch.

B.) At all times relevant to this complaint Defendant Roger D. Mulch is The Sheriff of Jefferson County. Sheriff Mulch is sued in his Official Capacity.

C.) At all times relevant to this complaint Defendant Randy Pollard is the Jail Administrator/Captain of the Jefferson County Detention Facility. Captain Pollard is sued in both his Official and Individual capacity.

D.) At all times relevant to this complaint Defendant Mount is a Lieutenant/Shift Supervisor of the Jefferson County Detention Facility. Lieutenant Mount is sued in his Individual capacity.

E.) At all times relevant to this complaint Defendant Jefferson is a Jail guard of the Jefferson County Detention Facility. C/O Jefferson is sued in his Individual capacity.

F.) At all times relevant to this complaint Defendant Edwards is a Jail guard of the Jefferson County Detention Facility. C/O Edwards is sued in his Individual capacity.

G.) At all times relevant to this complaint Defendant Widget is a Jail guard of the Jefferson County Detention Facility. C/O Widget is sued in his Individual Capacity.

H.) At all times relevant to this complaint Defendant Unknown Sheriff's Deputy is a Sheriff's Deputy of the County of Jefferson. Sheriff's Deputy is sued in his Individual capacity.

I.) At all times relevant to this complaint Defendant Gray is a Jailguard of the Jefferson County Detention Facility. C/O Gray is sued in his Individual Capacity.

J.) At all times relevant to this complaint Defendant Hanes is a Jail guard of the Jefferson County Detention Facility. C/O Hanes is sued in his Individual capacity.

K.) At all times relevant to this complaint Defendant Pesca is a Jail guard of the Jefferson County Detention Facility. C/O Pesca is sued in his Individual capacity.

L.) At all times relevant to this complaint Defendant Unknown 3rd shift Supervisor is a Lieutenant/Shift Supervisor of the Jefferson County Detention Facility. Unknown Lieutnant is sued in his Individual capacity.

## "Color Of Law"

At all times relevant to this complaint Defendants; Roger D. Mulch, Randy Pollard, Mount, Jefferson, Edwards, Widget, Unknown Sheriff's Deputy, Gray, Hanes, Pesca, and Unknown 3rd Shift Supervisor were acting under the color of state law.

## II. Previous Lawsuits

A. Have you begun any other lawsuits in state or Federal court relating to your imprisonment?

   Yes ( )   NO (X)

B. If your answer to "A" is "yes", describe the lawsuit(s) in the space below. (If there is more than one (1) lawsuit, you must describe the additional lawsuits on another sheet of paper, using the same outline.) Failure to comply with this provision may result in summary denial of your complaint. N/A.

## III. Grievance Procedure

A. Is there a prisoner grievance procedure in the institution? __Yes__

B. Did you present the facts relating to your complaint in the prisoner grievance procedure? (X) Yes ( ) No

C. If your answer is "yes",

   1. What steps did you take? I filed a grievance, via fax since I was no longer being housed at the Jefferson County Jail, once I recieved a response I filed my appeal, and I also ~~was~~ filed a formal complaint with the County Jail and detention standards unit.

   2. What was the result? My grievance was denied and I never recieved a response back to my appeal, or from the County Jail and detention standards unit.

D. If your answer is "No" explain why not. N/A

E. If there is no prisoner grievance procedure in the institution, did you complain to prison authorities? Yes ( ) No ( )  N/A

F. If your answer is "yes"
   1. What steps did you take? N/A
   2. What was the result? N/A

G. If your answer is "No", explain why not. N/A

H. Attach copies of your request for an administrative remedy and the response(s) you recieved. If you cannot do so, explain why not. N/A.

(6)

- Statement of Facts... Plaintiff filed through his Jailhouse lawyer... Jose Cruz #2010-0405096

IV.

1) On May 10, 2009 Plaintiff Israel Muñoz Gallardo (herein after "Plaintiff"), was a pre-trial detainee of the Cook County Department of Corrections (herein after "CCDOC"), who was being housed at the Jefferson County Detention Facility (herein after "JCDF").

2) On May 10, 2009 Plaintiff was being housed on "E-block" in cell 5 on the lower tier.

3) On May 10, 2009 There were appx. Fourteen (14) detainees residing on "E-block".

4) On May 10, 2009 "E-block" was a segregational housing block.

5) On May 10, 2009 out of Fourteen (14) detainees housed on E-block (12) twelve of them were CCDOC pre-trial detainees housed at the JCDF, as was plaintiff, the other two (2) were JCDF pre-trial detainees.

6) On May 10, 2009 Plaintiff had a cellmate named Fernando Ojeda (herein after "Ojeda") who was also a CCDOC detainee.

7) On May 10, 2009 E-block detainees were only allowed out of their cells for one (1) hour a day, one (1) cell at a time.

8) On May 09, 2009 two (2) JCDF detainees who were cellmates had been having trouble with their malfunctioning toilet. These detainees repeatedly complained to the JCDF staff about this problem to no avail. Eventually these detainees got tired of smelling their own waste and made a general announcement that they were going to overflow their toilet to force JCDF staff to fix it. This announcement was met with resistance from the other E-block detainees who told them to hold on and wait a little longer, but these two (2) detainees would not be deterred.

9) The two (2) detainees began over-flowing their toilet which resulted in the bottom half of E-block, including the bottom tier cells, to become inundated in appx. six (6) inches of water. To make matters worse, these detainees had taken turns urinating and defecating in the stopped-up toilet prior to over-flowing it, thus, the contaminated water spread throughout the E-block dayroom and bottom tier cells.

10) E-block was stinking and there was filthy water everywhere. The E-block detainees began to complain in earnest, via cell intercom, to the JCDF staff who were refusing to allow detainees, including plaintiff, to clean out their cells.

11) Eventually Defendant LT. Mount (herein after "Mount"), the shift supervisor, came to E-block and told detainees "Fuck it, since y'all want to make a mess then y'all have to sit in it!" E-block detainees began to heatedly complain that they'd had nothing to do with the flooding and, thus, shouldn't be punished, while the two (2) detainees who had flooded owned up to their actions and attempted to explain why they'd felt compelled to do so. Mount's response was "...Well that's not my problem, take that up with the gentlemen who did this because y'all have them to thank for this!" and left off of E-block.

12) Plaintiff and the rest of the E-block detainees therefore were forced to eat, sleep, and breathe in that stench...

(7)

... all that evening and night all the way to the following day of May 10, 2009, until CCDOC detainee Frederick Smith was allowed to come out of his cell for his "hour-out", given cleaning supplies and attempted to clean the E-block dayroom in exchange for extra time out of his cell.

13) Frederick Smith was not able to do much in the way of cleaning the dayroom, and nothing at all for the water in the cells so once he was done the other detainees' "hours" were commenced and individual cells were then permitted to clean.

14) On May 10, 2009 Plaintiff along with detainee Ojeda were finally let out of their cell for their "hour-out". They were the last cell on the bottom tier to come out, it was appx. 6:00pm.

15) Plaintiff and Ojeda had been out appx. forty (40) minutes when Defendant C/O Gray (herein after "Gray") informed them that their time was almost up. Plaintiff and Gray had a disagreement about how much time was actually left on the detainees' hour, so Plaintiff requested to speak to the Shift Commander, Mount.

16) Plaintiff spoke to Mount, via dayroom intercom, as he had with Gray, and informed Mount of the time dispute, but Mount was not listening to Plaintiff, even when Plaintiff informed Mount that Ojeda and Plaintiff were still in the process of cleaning their cell and that Ojeda was trying to "squeegee" the water.

17) A few minutes after Plaintiff's last conversation with Mount, Defendant Widget (herein after "Widget"), Defendant Jefferson (herein after "Jefferson"), Defendant Edwards (herein after "Edwards"), Defendant Unknown Sheriff's Deputy (herein after "Deputy"), and Mount himself entered E-block.

18) Jefferson and Edwards were each wielding a shotgun loaded with special impact munitions (herein after "bean bag rounds") while the other's were armed with Tazers.

19) Plaintiff tried to show Mount all the water that was still in Plaintiff's cell and how Ojeda was futilely attempting to purge the cell of the filthy water. Yet and still Mount was acting indifferent even when Plaintiff and Ojeda pointed out small bits and pieces of feces smeared on the dayroom floor.

20) Mount refused to listen or acknowledge anything that Plaintiff or Ojeda were saying to him, he just didn't care, and he was carrying himself in an unnecessarily aggressive manner as did the other defendants.

21) More words were exchanged between Plaintiff and Mount while Ojeda frantically kept trying to get all the water out of their cell, until Mount finally stated "Fuck this, shoot his ass!"

22) The first shot hit Plaintiff's left upper thigh. Plaintiff was shot several times and even Ojeda was hit in his abdomen by a bean bag round, by an over eager Jefferson even though Ojeda was inside of the cell and could not in any way be deemed a threat.

(8)

23) Plaintiff received one (1) volley [or] Jefferson's shotgun but not Edwards'.

24) By the time that the defendants stopped shooting, Plaintiff had been hit five (5) times appx. in both his legs by Jefferson and Edwards.

25) Once inside the cell, Plaintiff found Ojeda "balled-up", crying on the side of the toilet holding his swollen and bleeding mid section and struggling to breathe.

26) Plaintiff slowly and with great difficulty struggled to remove his JCDF jumpsuit which was becoming soaked with blood in the thigh area. Once the jumpsuit was off Plaintiff began to assess his wounds, his legs were extremely swollen, bruised and bleeding at the points of impact, but no bones seemed to be broken which Plaintiff counted himself very lucky for since the beanbag rounds hit at such close range. Plaintiff could not walk due to the excruciating pain. Standing, sitting or laying down were equally painful.

27) Plaintiff attempted to clean his wounds with soap, water, and a wet towel. Plaintiff could not contain the bleeding, his wounds were continuously seeping blood, his efforts were futile and very painful. It was obvious by Plaintiff's and Ojeda's visible injuries that both of them were in need of medical care.

28) Twice on 2nd shift after Plaintiff and Ojeda were shot, Gray and other CIO's entered E-block and approached Plaintiff's cell, once in search of a spent bean bag round casing believed to be in Plaintiff's cell and once to retrieve the "Squeegee" that was left behind in Plaintiff's cell. On both of these occasions Plaintiff and Ojeda urgently asked to be given medical attention for their wounds but Gray's attitude was one of amusement as if he were enjoying Plaintiff's and Ojeda's pain and discomfort. It was plainly visible that Plaintiff's injuries were serious and that he was not just "malingering".

29) On numerous occasions Plaintiff and Ojeda tried to communicate, via cell intercom, with JCDF staff to request medical attention, but the CIO's in the "control room" refused to answer Plaintiff's "cell calls". Plaintiff had to resort to asking the other E-block detainees to call on their intercoms and ask the CIO's to answer Plaintiff's cell calls.

30) When Plaintiff's intercom was finally answered, Plaintiff spoke to Gray, Jefferson and Mount during different intercom communiques. In each one of these conversations Plaintiff requested and even demanded medical attention for himself and Ojeda and specifically stated that he was in unbearable pain and bleeding.

31) Plaintiff was given various responses to his requests for medical care ranging from Defendant Captain Pollard (herein after "Pollard") had been notified and was making arrangements for them to be taken to an "outside hospital", to "we're working on it". Throughout the rest of the 2nd shift, Plaintiff ...

(9)

... repeatedly requested medical care, Defendants were becoming Plaintiff and Ojeda were not given even an aspirin to ease the tremendous pain.

32) As soon as shift changed and the 3rd shift officers entered E-block to conduct their "count", Plaintiff and Ojeda immediately asked these clo's, Defendant Hanes (herein after "Hanes") and defendant Pesca (herein after "Pesca") to please get them some medical help and relayed to them how they'd been trying to get help throughout the past shift and had gotten none. Plaintiff and Ojeda even showed these defendants their injuries to visually convey the severity of their need for medical care. These defendants informed Plaintiff that they were well aware of what had transpired on the earlier shift and said that they'd speak to Defendant Unknown 3rd shift supervisor. When Plaintiff asked Pesca and Hanes who the 3rd shift supervisor was, Hanes and Pesca refused to tell Plaintiff the supervisors name.

33) Throughout the next few hours whenever Pesca or Hanes came on E-block to do "count" Plaintiff would ask them about the medical attention. Pesca and Hanes initially told Plaintiff that they were waiting on their supervisor. After a while of getting the "run-around" Plaintiff became agitated due to having endured the pain from his injuries for hours and began calling on his intercom and demanding help, and when Pesca and Hanes came to count Plaintiff told them that it was their job to get Plaintiff and Ojeda some medical attention and that Plaintiff was going to file a grievance on them. Plaintiff asked Pesca and Hanes if they could at least procure some pain pills - which was a common enough practice - for him and Ojeda. Pesca told Plaintiff flat out "No!" and to write that up in a grievance, and Hanes said that the "Lieutenant says you're on G.N.C.!" (Got Nothing Coming).

34) Plaintiff finally laid down when he realized that he was not going to be getting any medical care on the 3rd shift either. (See Exhibits A1-A4)

35) On May 11, 2009 Plaintiff was awakened when his cell door was electronically opened and several clo's and an JCDF staff nurse entered his cell. The nurse asked Plaintiff to stand up so that she could examine Plaintiff's injuries. When Plaintiff tried to get up it was very painful and difficult and then Plaintiff realized that one of the reasons for this was because the bed linens and Plaintiff's own boxer shorts had become stuck to his open wounds. It was apparent that plaintiff needed assistance so the nurse had the clo's help Plaintiff get up. Plaintiff had to literally "unstick" himself from the sheets!

36) Plaintiff's linens were soiled with so much dried blood that the nurse expressed horrification and asked the clo's accompanying her "Why isn't he in a hospital?" "he needs to be in a hospital immediately!" The nurse then informed Plaintiff that he would be taken her office for further evaluation, and that he would be provided with fresh linens, a fresh jumpsuit, and a chance to shower up before he left the block. Then the nurse and clo's left off of E-block.

(10)

37) Not long later, Plaintiff was done being painted and taking pictures of injuries, he was done he was taken to the nurse's station. At the nurse's station, the Jail Administrator Pollard, LT. Hughey, LT. May, and the nurse were present. Plaintiff's injuries were looked over by all present and then Pollard ordered the nurse to place bandages over the wounds, then Pollard told LT. May to get a camera and take pictures of Plaintiff's legs. Appx. two (2) pictures were taken. Plaintiff was then informed that he'd be going to the hospital shortly. (see exhibits B1-B2)

38) Plaintiff asked Pollard why it had taken so long for Plaintiff to get medical care, and went ahead and explained about the previous night's attempts by Plaintiff and Ojeda to seek medical assistance and about JCDF staff not so much as lifting a finger to help them. Pollard said that he wasn't aware of Plaintiff ever having asked for medical care. Plaintiff told Pollard that that was bullshit and that even if Plaintiff had not requested medical attention that it should've been a given due to the nature and extent of the injury Plaintiff and Ojeda had suffered. Pollard responded "Well maybe next time you'll lock-up when ordered to!"

39) Plaintiff was then led to the JCDF intake to the holding cells to await transport. Not long later, Plaintiff was taken out of the holding cell by C/O Jesse Garcia who began putting transport restraints on Plaintiff in preparation for the trip to the hospital. Plaintiff showed C/O Garcia his injuries and explained to him what had occurred. C/O Garcia shook his head and told Plaintiff in spanish "Son abusadores! Ya te tenian ganas!" which in eglish means "They are abusers! They had it in for you!".

40) Plaintiff was escorted to St. Mary's Good Samaritan Hospital in Mt. Vernon, Illinois by two (2) C/O's. C/O May and C/O Clerk, and then returned to the JCDF.

41) Back at the JCDF, Plaintiff was not allowed to come out of his cell, not even to take another shower or to notify his family, via telephone, of what had happened to him. Plaintiff then showed the JCDF staff that he'd bled through his bandages and needed to wash his wounds to keep them clean.

42) Upon information and belief, On May 11, 2009 in the early morning hours, appx. 1:00 am, detainee Willie Doles another CCDOC detainee housed at the JCDF on E-block, was being transported back to the JCDF, after a court hearing at the CCDOC, by members of the CCDOC's External Operations team (herein after "Ex-Ops") - C/O Newsome and Sgt. Conner -. On the van ride to the JCDF detainee Doles over heard a cell-phone conversation between an "Ex-Ops" C/O and someone from the JCDF. The ex-ops C/O's were phoned in regards to the bean bag round shooting of Plaintiff by JCDF Personnel. The JCDF staff member relayed the events then asked the Ex-Ops C/O "what should we do?" The Ex-Ops C/O responded "What should you do?! Take him to the hospital immediately!". After the call the two (2) Ex-Ops C/O's discussed the call unable to...

(11)

... to comprehend why Plaintiff had documentation full of visits to hospital ... to Plaintiff by detainee Doles, when Doles returned to the JCDF.

43) On May 12, 2009 in the morning hours of appx. 1:00 am, Plaintiff was transported back to the CCDOC. Plaintiff had to attend a scheduled court hearing for later on that morning in front of the Honorable Judge Flemmings. Plaintiff was originally supposed to have been transported back on May 10, 2009 but was not transported due to the incident.

44) When Plaintiff arrived at the CCDOC he was taken to the courthouse and placed in the holding cell corresponding to his courtroom. Not long later, Plaintiff's attorney arrived and Plaintiff explained to him what had happened on May 10, 2009 and also showed him his injuries. Plaintiff was in extreme pain and could not even walk, so he was given some pain pills. Plaintiff's attorney immediately went to speak to Judge Flemmings and obtained an Court Order to have several photographs taken of Plaintiff's injuries right there in the court room's lock-up. (see exhibits C1-C12).

45) Plaintiff was not returned back to the JCDF after his May 12, 2009 court hearing but kept back at the CCDOC.

46) Appx. One (1) week later Plaintiff had to be transferred over to the CCDOC's Medical Unit - Division eight (8) - due to the injuries Plaintiff had sustained at the JCDF. A day or so later, Plaintiff was taken to CCDOC's onsite emergency room/hospital - Cermak -. Doctors at Cermak were forced to cut open Plaintiff's left upper thigh and drain one of his wounds, because huge amounts of clotted blood was trapped under the skin and Doctors feared infection.

47) Appx. two (2) weeks after Plaintiff was transferred back to the CCDOC, his property finally caught up to him, and Plaintiff immediately began to exhaust his administrative remedies, by having a CCDOC social worker fax a handwritten grievance dated May 27 2009, on June 10, 2009. (See exhibits D1-D3)

48) Within days Plaintiff recieved a response from Pollard denying Plaintiff's request for relief. (see exhibit E1)

49) On June 01, 2009 Plaintiff filed a formal complaint against the JCDF to the Jail and Detention Standards Unit in Springfield, Illinois, via U.S. Postal Mail. Plaintiff never recieved a response concerning this complaint. Plaintiff had been in contact with the Jail and detention standards Unit on prior occasions concerning JCDF practices which Plaintiff filed complaints on. (see exhibits F1-F8)

50) On June 15, 2009 Plaintiff sent an Appeal of Pollard's decision to Defendant Sheriff Roger D. Mulch (herein after "Mulch"), via U.S. Postal mail, but Plaintiff never recieved a response to his appeal. (see exhibit G1)

51) Since the May 10, 2009 shooting of Plaintiff by JCDF staff, Plaintiff has had chronic pain in his legs. Plaintiff no longer has the full-range of use of his legs to the extent that he did before he was injured ...

(12)

... and on occasion has even had to take pain pills and muscle relaxers because of the spasms and shooting pains in his legs get so bad. Plaintiff's left and right upper thigh and back upper left thigh are badly scarred and mutilated, as a result of the defendants actions and inactions. Plaintiff's injuries are irreparable. Plaintiff has since suffered from nightmares about the shooting and also suffers from indefinable anxiety attacks, as well as frequent bouts of depression.

52) Plaintiff's persona and character have been greatly altered by the events of May 10, 2009. He is no longer the carefree, easy-going young man he was before May 10, 2009, and now lives in constant and terrifying fear of jail guards that he has to interact with on a daily basis. Plaintiff's loss is incompensable.

53) As long as Plaintiff remains a detainee, Plaintiff will live in a constant state of paranoia and terror, and anxiety, in perpetual fear of being attacked by correctional officers.

## Legal Claims

54) Plaintiff realleges and incorporates by reference paragraphs 1-53.

Count 1. Failure to adequately train; Excessive use of force
Official Capacity defendants (Mulch, Pollard)

Defendant Mulch is the Sheriff of Jefferson County and therefore is the ultimate policy maker at the JCDF. Defendant Pollard is the Captain/Jail Administrator at the JCDF, and therefore is the highest ranking official at the JCDF, and is responsible for the day to day operations at the JCDF. It is the responsibility of these two (2) defendants to formulate and put into effect the appropriate policies which ensure the safety and well being of all the detainees housed at the JCDF and to ensure that the JCDF staff are properly trained so that they may correctly approach any situation which may present itself within the purview of their employment. Defendant Mulch and Defendant Pollard have failed to institute effective policies which would keep their charges safe against the excessive and unnecessary use of force by JCDF staff. This is exacerbated by their failure to properly train their officers in the proper use of force, the proper use of weapons at their disposal, the proper methodology and training in dealing with high risk detainees such as those CCDOC detainees that JCDF contracted to house, and the failure to properly discipline JCDF staff accused of improperly using force on detainees. Plaintiff has himself witnessed acts of excessive force by JCDF staff on JCDF detainees as well as CCDOC detainees. The excessive use of force seems to be a well-accepted custom, and defendants Mulch and Pollard have been put on notice of its existence by the numerous grievances that have been filed and/or instances of abuse that have been perpetrated. Plaintiff has also been told of different incidents where JCDF staff abused their authority in dealing with detainees, especially CCDOC detainees, by other detainees. These omissions being the direct cause of Plaintiff's physical, mental and emotional injuries and suffering. The defendants failure to properly train their officers and their failure to remedy the pervasive risk of excessive force by their officers has violated Plaintiff's rights and constituted a due process violation under the 14th Amendment to the United States Constitution (See exhibit #1)

Count 2. Excessive Force / Failure to Intervene

Individual Capacity defendants (Mount, Jefferson, Edwards, Widget, Unknown Sheriff's Deputy)

Defendant Mount is a Lieutenant / shift commander of the JCDF. Mount gave Jefferson and Edwards the numerous orders to continuously fire upon Plaintiff. Defendants Jefferson and Edwards are JCDF staff members who under Mount's orders repeatedly fired bean bag rounds at close range into defendants person. Defendants Widget and Unknown Sheriff's Deputy stood by and watched Plaintiff being struck by the projectiles, even though Plaintiff was not a threat at the time to himself or to anyone else, and failed to intervene as their duty as peace officers required them to do. The unnecessary use of force exercised by defendants and wanton infliction of pain was done in an intentional, malicious, and bad faith effort to punish Plaintiff and violated Plaintiff's rights and constituted a due process violation under the 14th Amendment to the United States Constitution.

Count 3. Denial of Medical Care

Individual Capacity defendants (Pollard, Mount, Jefferson, Edwards, Gray, Hanes, Pesca, Unknown 3rd shift supervisor)

The reckless disregard to Plaintiff's medical needs by the defendants was done in an intentional, malicious, and bad faith effort to punish defendant by unnecessarily subjecting him to great pain and distress, and harm for lack of treatment to a very visible and obvious medical need. The defendant denial of medical attention violated Plaintiff's rights and constituted a due process violation under the 14th Amendment to the United States Constitution.

Count 4. Jefferson County as Indemnitor to Sheriff Mulch

Defendant County of Jefferson is required to pay for any judgement that may be entered against the County Sheriff in his Official capacity. 745 ILCS 10/9-102.

The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably harmed by the conduct of the defendants unless this court grants the declaratory and monetary relief which Plaintiff seeks.

## V. REQUEST FOR RELIEF

Wherefore, Plaintiff respectfully prays that this Court enter judgement granting Plaintiff: A declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

Compensatory Damages in the amount of $1,000,000 on each count against each defendant named, jointly and severally.

Punitive Damages in the amount of $750,000 against defendants Pollard, Mount, Jefferson, Edwards, Gray, Hanes, Peixe, Widget, Unknown Sheriff's deputy, and Unknown 3rd shift Supervisor.

A Jury trial on all issues triable by a Jury.

Plaintiff's costs in this suit.

Any additional relief this Court deems just, proper, and equitable.

By and through Plaintiff's Jailhouse Lawyer Jose Cruz #2010-0605096

## VI. Jury Demand

The Plaintiff does ☒ does not ☐ request a trial by Jury (see Fed. R. Civ. P. 38.)

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I, the undersigned, certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11(a) and (b) may result in sanctions, monetary or non-monetary, pursuant to Federal Rules of Civil Procedure 11(c).

The Plaintiff hereby requests the Court issue all appropriate service and/or notices to the defendant(s).

Signed this 3rd day of June, 2011

_Israel Munoz #2006 0043234_
Plaintiff

_Jose Cruz #2010-0605096_
Jailhouse Lawyer

(15)

"Exhibit 6"

1) "Exhibit A1", is a signed declaration by detainee Tony Benson regarding the May 10, 2009 incident when Plaintiff Israel Muñoz was shot by JCDF staff.

2) "Exhibit A2" is a signed declaration by detainee Robert Macias regarding the May 10, 2009 incident when Plaintiff Israel Muñoz was shot by JCDF staff.

3) "Exhibit A3" is a signed declaration by detainee Frederick Smith regarding the May 10, 2009 incident when Plaintiff Israel Muñoz was shot by JCDF staff.

4) "Exhibit A4" is a signed declaration by detainee D'andre Greer regarding the May 10, 2009 incident when Plaintiff Israel Muñoz was shot by JCDF staff.

5) "Exhibits B1-B2" are photographs taken at the JCDF on May 11, 2009, by LT. May, of Plaintiffs legs.

6) "Exhibits C1-C12" are the investigation request orders, summary of investigation, and photographs of Plaintiff's injuries taken at the CCDOC Court house on May 12, 2009.

7) "Exhibit D1-D3" are the Fax sheets and Grievance sent to the JCDF on June 10, 2009 by Plaintiff through his social worker from the CCDOC, concerning the May 10, 2009 incident, at the JCDF.

8) "Exhibit E1" is Defendant Pollard's denial of remedy to Plaintiff Israel Muñoz at the CCDOC, concerning the May 10, 2009 incident, at the JCDF.

9) "Exhibits F1-F8" are copies of communications between Plaintiff Israel Muñoz and the Jail and detention standards Unit regarding practices at the JCDF that the Plaintiff was complaining about and the May 10, 2009 incident.

10) "Exhibit G1" is a copy of the June 15 2009 Appeal of grievance decision that plaintiff mailed to Sheriff Mulch at the JCDF.

11) "Exhibit H1" is a signed declaration by detainee Derick Lowery, concerning an instance of excessive use of force by JCDF staff against his person.

(16)