IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ISRAEL MUNOZ-GALLARDO, | ) | |
| # K-61513, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | Case No. 3:11-cv-0530-MJR |
| | ) | |
| JEFFERSON COUNTY, | ) | |
| SHERIFF MULCH, CPT. POLLARD, | ) | |
| LT. MOUNT, C/O JEFFERSON, | ) | |
| C/O EDWARDS, C/O WIDGET, | ) | |
| C/O GRAY, C/O HANES, C/O PESCA, | ) | |
| UNKNOWN SHERIFF'S DEPUTY, and | ) | |
| UNKNOWN THIRD SHIFT SUPERVISOR, | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM AND ORDER</u>

REAGAN, District Judge:

### A.    Introduction

Plaintiff Israel Munoz-Gallardo, an inmate in Stateville Correctional Center,

brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C.

§ 1983, based on incidents that occurred while he was a pretrial detainee at Jefferson

County Jail ("Jefferson").   Plaintiff is serving a five year sentence for possession of

contraband in a penal institution.   This case is now before the Court for a preliminary

review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any
> event, as soon as practicable after docketing, a complaint in a civil action in
> which a prisoner seeks redress from a governmental entity or officer or employee
> of a governmental entity.

(b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*  At the same time, the factual allegations of a pro se complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A.  Portions of this action are subject to summary dismissal.

### B.        Overview of Complaint Allegations

Plaintiff alleges the following.

On May 9, 2009, two Jefferson inmates deliberately caused their cell toilet to overflow, inundating Plaintiff's cell block with contaminated water.  The next day (May 10, 2009), guards released inmates from their cells for an hour per cell to help clean the cell block.  At approximately 6:00 p.m., staff allowed Plaintiff and his cellmate, Detainee Ojeda ("Ojeda"), their hour to clean.  Plaintiff alleges that forty minutes had passed when Defendant Gray informed them that they would have to return to their cell. Plaintiff disagreed with Defendant Gray on how much time was left on their hour and asked to speak with Defendant Mount.  Plaintiff then informed Defendant Mount that he and Ojeda were still in the process of cleaning, but Mount would not listen.

A few minutes after speaking with Defendant Mount via intercom, Defendants Widget, Jefferson, Edwards, Mount, and Unknown Sheriff's Deputy entered the cell block.  Defendants Jefferson and Edwards each had a shotgun loaded with "bean bag rounds," and the other officers each had Tasers (Doc. 1, p. 8).  After the officers entered the cell block, Ojeda continued cleaning while Plaintiff spoke with Defendant Mount.  Plaintiff and Defendant Mount exchanged words until Defendant Mount ordered the guards to fire at Plaintiff.  At this point, Defendants Jefferson and Edwards shot Plaintiff approximately five times in his legs, while Defendant Mount yelled, "shoot Munoz" (Doc. 1, p. 9).  Plaintiff claims that Defendant Jefferson also shot Ojeda once in the abdomen.

Plaintiff's legs were "extremely swollen, bruised, and bleeding," and he attempted to clean his wounds with soap and water (Doc. 1, p. 9).  Over the next few

hours, Plaintiff requested pain pills and medical attention from Defendants Hanes, Gray, Jefferson, Mount, and Pesca, all of whom denied Plaintiff's requests. Plaintiff eventually laid down and went to sleep. The next morning (May 11, 2009), a staff nurse and correctional officers woke Plaintiff, at which point he had to "unstick" himself from his sheets because his blood had dried on his bed sheets (Doc. 1, p. 10). Staff took Plaintiff to the nurse's station, where Defendant Pollard looked him over and ordered staff to take pictures of Plaintiff's wounds. Plaintiff recounted the details of the previous day's events to Defendant Pollard, who responded, "maybe next time you'll lock-up when ordered to" (Doc. 1, p. 11). Three correctional officers then took Plaintiff to St. Mary's Hospital in Mt. Vernon, Illinois where medical staff treated his injuries.

Plaintiff requests a jury trial and compensatory damages for violation of his Fourteenth Amendment rights.

### C.   Analysis

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into three counts. **The parties should use these designations in all future pleadings, unless otherwise directed by a judicial officer of this Court.** The designation of these counts does not constitute an opinion as to their merit.

### Count 1 – Excessive Force

Plaintiff claims that Defendants Mount, Jefferson, Edwards, Widget, and Unknown Sheriff's Deputy subjected him to cruel and unusual punishment on May 10, 2009. Although claims brought pursuant to § 1983, when involving detainees, arise under the Fourteenth Amendment and not the Eighth Amendment, *see Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000), the Seventh Circuit has "found it convenient and

entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'"   *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n. 2 (7th Cir. 1999)); *see also Forrest v. Prine*, 620 F.3d 739 (7th Cir. 2010).

In the prison context, the Eighth Amendment is violated where there is an "unnecessary and wanton infliction of pain."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Force is considered excessive where it is not utilized in "a good-faith effort to maintain or restore discipline", but instead is applied "maliciously and sadistically" to cause harm.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Id.* (the question is whether force was de minimis, not whether the injury suffered was de minimis).  *See also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Plaintiff has pled sufficient facts to state a claim that Defendants Mount, Jefferson, and Edwards, in shooting him with bean bag rounds, subjected him to cruel and unusual punishment.  Based on the allegations in Plaintiff's complaint, it is unclear whether Defendants were attempting to maintain or restore discipline during the May 10, 2009 altercation.  However, Plaintiff's claims that Defendants Jefferson and Edwards shot him approximately five times, coupled with Defendant Mount's orders to his subordinates, could at least lead to the inference that the force was applied sadistically and maliciously.  Furthermore, shooting someone with bean bags is the type

of force that a factfinder is unlikely to construe as de minimis.  Therefore, this claim survives threshold review and is not subject to dismissal at this time.

Plaintiff also asserts that Defendants Widget and Unknown Sheriff's Deputy merely stood by and watched other officers during the May 10, 2009, altercation and that these defendants are equally as liable for his injuries due to their failure to intervene.  The Seventh Circuit has examined this issue as it pertains to police officers who fail to intervene when a fellow officer exceeds his authority, stating:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

*Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *see also Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases); *Archie v. City of Racine*, 826 F.2d 480, 491 (7th Cir. 1987).

Adopting the affirmative duty imposed on police officers, Defendants Widget and Unknown Sheriff's Deputy are liable for the reasonably foreseeable consequences of the alleged unlawful acts of Defendants Mount, Jefferson, and Edwards.  The Seventh Circuit has imposed a duty to intervene on similar peace officers, and it follows that correctional officers would share the same responsibility to preserve peace and order in a prison setting.  Since the above claim against

Defendants Mount, Jefferson, and Edwards cannot be dismissed at this time, Defendants Widget and Unknown Sheriff's Deputy similarly cannot be dismissed from the same claim.

### Count 2 – Failure to Train

#### a.  Defendants Mulch and Pollard

Plaintiff asserts that Defendants Mulch and Pollard failed to properly train their subordinates in the use of force, and are therefore liable for his alleged May 10, 2009 Eighth Amendment infringements.  The doctrine of *respondeat superior* does not apply to § 1983 actions.  So, to be liable a defendant must be alleged to be personally responsible for the constitutional violation.  *See Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). For liability to attach to an individual in a supervisory role,

> At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.  *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir. 1982).  Inaction by the … officials would also not attach liability. There can be liability only when there is an extremely high degree of culpability for inaction.

*Lenard v. Argento*, 699 F.2d 874, 885 (7th Cir. 1983).

Here, Plaintiff alleges that the excessive use of force by Jefferson staff "seems to be a well-accepted custom" (Doc. 1, p. 13).  As evidence of such a custom, Plaintiff only offers his personal experience on May 10, 2009, and general allegations that he has witnessed acts of excessive force.  Such allegations are insufficient to state a claim that Defendants Mulch and Pollard failed to adequately train their staff or implement policies that would prevent occurrences like the May 10, 2009, incident.

Without alleging any other specific occurrences, Plaintiff's assertion that excessive force is "pervasive" at Jefferson must be regarded as conclusory (Doc. 1, p. 13). In fact, Plaintiff's complaint includes a comment from Defendant Pollard, "maybe next time you'll lock up when ordered to," suggesting that Defendant Pollard believed the officers were justified in their use of force. As such, Plaintiff has not pled sufficient facts to suggest that the events of May 10, 2009, were the result of an implicit authorization or approval of Defendants Mulch and Pollard. Therefore, this claim shall be dismissed without prejudice.

### b.      Defendant Jefferson County

Plaintiff includes Defendant Jefferson County in his complaint as an indemnitor to Defendant Mulch. Plaintiff does not bring any specific claims against Defendant Jefferson County alleging a civil rights violation. As Defendant Mulch is dismissed from this action, Defendant Jefferson County can be similarly dismissed without prejudice.

### <u>Count 3 – Deliberate Indifference to a Medical Need</u>

Plaintiff claims that Defendants Pollard, Mount, Jefferson, Gray, Hanes, Pesca, and Unknown Third Shift Supervisor showed deliberate indifference to his injuries incurred on May 10, 2009, by denying him adequate medical care. It is well-established that, while in the custody of state or local authorities, a pretrial detainee must be afforded certain protections under the Fourteenth Amendment, including access to adequate medical care. *See City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); *Payne v. Churchich,* 161 F.3d 1030, 1040-41 (7th Cir.1998).

The Seventh Circuit has repeatedly explained that these due process rights are *at least as great* as the protections afforded a convicted prisoner under the Eighth Amendment.  *See Higgins v. Correctional Med. Servs. of Ill., Inc.,* 178 F.3d 508, 511 (7th Cir.1999); *Payne,* 161 F.3d at 1040; *Estate of Cole v. Fromm,* 94 F.3d 254, 259 n. 1 (7th Cir.1996).  Consequently, when considering a pretrial detainee's claim of inadequate medical care, courts frequently turn to the analogous standards of Eighth Amendment jurisprudence.  *See Higgins,* 178 F.3d at 511; *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir.1999).

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition."  *Estelle,* 429 U.S. at 106.  *See also Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999).  Deliberate indifference involves a two-part test.  The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate;  it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

For the <u>objective</u> prong of the two-part *Sherrod* test, the Seventh Circuit considers the following to be indications of  a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain."  *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). In addition, a condition that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention is also considered a "serious" medical need.  *Id.*

For the <u>subjective</u> prong of the two-part *Sherrod* test, the Seventh Circuit requires evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm.  *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering").  The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice

is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (courts will not take sides in disagreements with medical personnel's judgments or techniques). However, a plaintiff/inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (discussing *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996)).

In the instant case, Plaintiff describes the injuries he sustained from the bean bag rounds in great detail, alleging that he bled so profusely that his sheets were stuck to his body when he woke up the next morning. Furthermore, Plaintiff's injuries were serious enough to warrant him going to an outside hospital to obtain treatment. Thus, Plaintiff has alleged sufficient facts to suggest that he was suffering from a serious medical need.

### a.    Defendants Mount and Jefferson

In addition to alleging the use of excessive force, Plaintiff also alleges that Defendants Mount and Jefferson were deliberately indifferent to the injuries he incurred on May 10, 2009. Although Defendants Mount and Jefferson are not medical providers, the Seventh Circuit has held that a guard who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]" *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996). Thus, Defendants Mount and Jefferson, who perpetrated the assault *and* then allegedly prevented Plaintiff from getting immediate medical attention for his injuries, may be found liable for deliberate indifference to Plaintiff's need for medical care. At this stage, it cannot be determined

whether the actions of Defendants Mount and Jefferson resulted in Plaintiff being denied medical care or otherwise constituted deliberate indifference to Plaintiff's serious medical needs.  Therefore, Plaintiff's claim of deliberate indifference against Defendants Mount and Jefferson shall not be dismissed at this stage.

### b.     Defendants Gray, Hanes, and Pesca

Separately, Plaintiff claims that Defendants Gray, Hanes, and Pesca refused treatment for his legs while he was waiting to be transported to the hospital. Plaintiff has alleged facts from which a factfinder could infer that Defendant Gray intended to prolong Plaintiff's pain.  Defendant Gray's refusal to seek medical treatment for Plaintiff despite his pleas for help, coupled with his overall "[attitude] of amusement" at Plaintiff's predicament, indicate that he may have had a punitive intent in delaying or denying Plaintiff medical help (Doc. 1, p. 9).  Similarly, Plaintiff's allegations against Defendants Hanes and Pesca support a claim of deliberate indifference.  From the complaint, it appears as though these Defendants repeatedly denied Plaintiff any pain medication over the course of several hours.  Additionally, it is unclear from Plaintiff's allegations if Defendant Hanes or Pesca ever contacted their supervisor in reference to Plaintiff's medical situation.  Thus, Defendants Gray, Hanes, and Pesca shall not be dismissed at this stage.

### c.     Defendant Unknown Third Shift Supervisor

Plaintiff maintains that an unknown Third Shift Supervisor delayed his transfer to the hospital, thus prolonging his pain.  Plaintiff's allegations against Defendant Unknown Third Shift Supervisor are too vague to state a claim that this Defendant was deliberately indifferent to Plaintiff's medical needs.  As mentioned

previously, Plaintiff does not offer any allegations suggesting that this individual was ever alerted to Plaintiff's situation by Defendants Hanes and Pesca. Furthermore, Plaintiff never alleges any personal contact or communication with this Defendant. Therefore, Plaintiff has not stated sufficient facts to suggest that Defendant Unknown Third Shift Supervisor denied or delayed his treatment in any way. Accordingly, Defendant Unknown Third Shift Supervisor shall be dismissed without prejudice.

### d. Defendant Pollard

Although Plaintiff asserts that Defendant Pollard was deliberately indifferent to his medical needs on May 11, 2009, the facts alleged in his complaint do not support this contention. Indeed, Plaintiff's allegations as to both encounters with Defendant Pollard suggest exactly the opposite — that Defendant Pollard initiated and organized Plaintiff's trip to St. Mary's Hospital on May 11, 2009. The first time Plaintiff spoke with Defendant Pollard, he was informed that he would be taken to an outside hospital for treatment. Later, Plaintiff met with Defendant Pollard, who took pictures of Plaintiff's injuries and then allowed him to proceed to St. Mary's Hospital. Such a course of action by a prison official does not rise to the level of deliberate indifference, as it does not create an inference that Defendant Pollard was acting with malicious or punitive intent in response to Plaintiff's injuries. Therefore, Defendant Pollard shall be dismissed without prejudice.

### D. <u>Disposition</u>

**COUNTS 1, 3(a) and 3(b)** survive threshold review and shall receive further consideration.

**COUNTS 2**, **3(c)** and **3(d)** fail to state a claim upon which relief can be granted and thus are **DISMISSED** without prejudice. **DEFENDANTS MULCH, JEFFERSON COUNTY, POLLARD** and **UNKNOWN THIRD SHIFT SUPERVISOR** are **DISMISSED** without prejudice.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants **MOUNT**, **JEFFERSON**, **EDWARDS**, **WIDGET**, **GRAY**, **HANES**, and **PESCA**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on Defendant **UNKNOWN SHERIFF'S DEPUTY** until such time as Plaintiff has identified him/her by name in a properly filed amended complaint.  Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for this individual.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall

14

be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for pretrial proceedings.  This entire matter is **REFERRED** to United States Magistrate Judge **Williams** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay

fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

IT IS SO ORDERED.

DATED July 9, 2012.

s/ MICHAEL J. REAGAN
Michael J. Reagan
United States District Judge

16